UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LOUIS STOKES a/k/a JOHN LOUIS HENRY**  **CIVIL ACTION**

**VERSUS**  **NO. 12-0244**

**SHERIFF MARLIN GUSMAN (OPP**  **SECTION "C"(4)**
**MEDICAL DEPT.)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.  Factual Background**

The plaintiff, Louis Stokes ("Stokes") a/k/a John Louis Henry, is an inmate presently housed in the Dixon Correctional Institute.[1] Stokes filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman and unidentified personnel in the Orleans Parish Prison ("OPP") Medical Department for denial of medical care while he was housed in O.P.P.

---

[1] Rec. Doc. No. 8.

Under a broad reading, Stokes alleges that he was tested in July of 2011 by a doctor at LSU medical center and was diagnosed as HIV positive.[2] He further alleges that he is not receiving timely medical care for HIV. He also appears to allege that he was denied medical treatment by Warden C. Golini and Chief G. Bordelon in their responses to his grievance complaints dated December 2-5, 2011 and December 14-11, 2011. He also appears to allege that his grievance form dated November 27-29, 2011 was returned to him with "to[o] much on it."[3] He did not, however, receive an answer to the grievance submitted to the OPP doctor. He further complains that grievance forms are not always available to Louisiana Department of Corrections ("DOC") prisoners housed in OPP and not all steps of the process are completed.

As relief, he asks the Court to assist him in getting to a DOC facility so that he can apply for the medical parole release program. He also seeks $400,000.00 in damages for his pain and suffering.

## II. Standards of a Frivolousness Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

---

[2]Rec. Doc. No. 6, pp. 3-4.

[3]Rec. Doc. No. 6, p. 4.

2

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.  Analysis

#### A.  Claims Against Sheriff Gusman

Stokes has named Sheriff Gusman as a defendant in his role as supervisory official over OPP. Stokes contends that he filed various grievances with the doctor, Warden, and Chief at OPP and did not receive relief or had the grievance returned to him. He has not named these prison officials as defendants. He instead has only identified Sheriff Gusman as the head of the jail. He has not, however, alleged that Sheriff Gusman was made personally aware of his medical needs or his grievances about his care to state a claim under § 1983.

As a supervisory official over the jail, Sheriff Gusman would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the jail allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas*

*A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He only would be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Stokes does not allege that Sheriff Gusman was aware of the difficulty he has had getting medical services. He also does not indicate that he in anyway notified the Sheriff personally about these complaints.

Stokes, therefore, has not demonstrated a personal connection or action that would render Sheriff Gusman liable under § 1983. His claims against Sheriff Gusman are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### B. Personnel in OPP Medical Department Not a Proper Defendant

Stokes has also indicated his intent to sue unidentified personnel in the OPP Medical Department as a defendant in this suit. However, § 1983 provides a federal cause of action against any <u>person</u>, who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989). A plaintiff must identify both the constitutional violation and the responsible <u>person</u> acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson,* 454 U.S. 312 (1981).

Stokes has not identified any particular member of the OPP medical staff as a person to be held accountable in this instance. A prison and its administrative departments are not entities that can be sued under § 1983, because they are not juridical entities under state law capable of being sued and therefore are not "persons" for purposes of suit under § 1983, as the statute and case law

define that term. *Cage v. Kent County Corr. Facility*, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir.1997); *Johnson v. LCDC Med. Staff*, No. 09cv13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009) (suit against medical staff dismissed because "the Medical Staff is not a suable entity under § 1983"); *Holifield v. Mobile County Sheriff's Dep't*, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008) (suit dismissed because the prison medical care unit "does not appear to be a distinct legal entity that is subject to suit"); *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Sponsler v. Berks County Prison*, No. 95–1136, 1995 WL 92370, at * 1 (E.D. Pa. Feb. 28, 1995); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill.1993).

Thus, Stokes cannot assert a claim against the personnel in the OPP Medical Department or the OPP Medical Department under § 1983, and the claims against that defendant should be dismissed as frivolous. *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007).

### C. Request for Transfer

As part of his requested relief, Stokes also seeks a transfer from OPP to a DOC facility so that he can access the medical parole release program. His request for transfer is frivolous for the following reasons.

It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be

5

"much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Under La. Rev. Stat. Ann. § 15:824, the Director of Corrections is authorized to decide to which penal institution an inmate should be delivered or transferred.[4] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, No. Civ. A. 95-4215, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

---

[4]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

Thus, the State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another. *Santos*, 1996 WL 89260 at *4. Therefore, Stokes has no constitutional right to a transfer, and his request for transfer is frivolous.

In addition, as a request for injunctive relief, his request for a transfer is also moot since he has in fact been transferred out of OPP to the Dixon Correctional Institute, a DOC facility in Jackson, Louisiana, with no indicated likelihood that he will return. *Smith v. City of Tupelo, Ms.*, 281 Fed. Appx. 279, 282 (5th Cir. June 2, 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer from prison where alleged civil rights violation occurred rendered moot claim for injunctive relief)). Accordingly, Stoke's claim for injunctive relief is now moot adding additional basis for its dismissal as frivolous.

**IV.**   **Recommendation**

It is therefore **RECOMMENDED** that Stoke's § 1983 complaint against Sheriff Gusman and the medical personnel in the OPP Medical Department be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 22nd day of May, 2012.

                                        **KAREN WELLS ROBY**
                             **UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.